UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MARGARET BARNETT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNUM LIFE INSURANCE )<br>COMPANY OF AMERICA, )<br>and UNUM GROUP )<br>CORPORATION, )<br>)<br>Defendants. )<br>_____ ) | Case #_____ |

**COMPLAINT FOR THE RECOVERY OF PLAN BENEFITS
AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

The Plaintiff, MARGARET BARNETT (BARNETT) sues the Defendants, UNUM LIFE INSURANCE COMPANY OF AMERICA (UNUM LIFE) and UNUM GROUP CORPORATION (UNUM) and states:

**Jurisdiction and Venue**

1. This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq. This Court has jurisdiction pursuant to 28 U.S.C. §1337 and ERISA § 502(e), 29 U.S.C. § 1132(e).

2. UNUM LIFE is an insurance company licensed to transact business in Tennessee, which is or was at all relevant times engaged in business in Hamilton County, Tennessee within this District and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1131.

3. Defendant UNUM is the parent company of Defendant UNUM LIFE.

4. Defendant UNUM exercises significant control over the policies and actions of Defendant UNUM LIFE.

5. Defendant UNUM is the employer of all persons who acted on behalf of UNUM LIFE.

6. Defendant UNUM may be served with process by and through its registered agent for service, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

7. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. §1132(e)(2).

## Governing Plan and ERISA Standard of Review

**The Plan:**

8. BARNETT is and/or was a participant in each of the plans, funds, programs, or arrangements described herein, or in the alternative, was at all times relevant a participant in each of the plans, funds, programs, or arrangements described herein.

9. BARNETT is a former employee of Quintiles Transnational Holdings, Inc.

10. At all relevant times, BARNETT was a participant in an employee benefit plan (hereafter referred to as "the Plan"), sponsored by Quintiles Transnational Holdings, Inc. providing disability benefits to participants.

**Funding and Purported Delegation of Discretion:**

11. Quintiles Transnational Holdings, Inc. funded its Plan by purchasing a group policy of insurance (policy #116963 001) underwritten by UNUM LIFE. A copy of this policy is attached hereto Exhibit A and is incorporated by reference.

12. The group policy (Exhibit A) was drafted in its entirety by Defendants.

13. The group policy (Exhibit A) is a contract of adhesion.

14. Defendants and Quintiles Transnational Holdings, Inc. use the group insurance policy (Exhibit A) as both the Plan document and Summary Plan Description (SPD).

15. No other plan documents exist other than the group insurance policy (Exhibit A).

16. No originating plan document exists which instituted the Quintiles Transnational Holdings, Inc. Disability Plan.

17. No originating plan document or other document exists in which Quintiles Transnational Holdings, Inc. reserved any discretionary authority to itself in relation to the Plan.

18. The employees or agents of Quintiles Transnational Holdings, Inc. and Defendants did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from Quintiles Transnational Holdings, Inc. to Defendants before purchasing the group insurance policy (Exhibit A) to fund the Plan.

19. The employees or agents of Quintiles Transnational Holdings, Inc. and Defendants did not discuss or correspond about the existence, meaning, or significance of the process required to delegate discretionary authority from Quintiles Transnational Holdings, Inc. to Defendants before purchasing the group insurance policy (Exhibit A) to fund the Plan.

20. At the inception of the Plan, Quintiles Transnational Holdings, Inc. did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

21. At the time it purchased the group disability insurance policy (Exhibit A) from Defendants, Quintiles Transnational Holdings, Inc. did not have any discretionary authority which it could delegate to an insurance company.

22. No document prepared by Quintiles Transnational Holdings, Inc. delegates any discretionary authority to Defendants.

23. Neither Defendants were delegated discretionary authority such that its claim decision is entitled to a discretionary review or arbitrary and capricious standard of review, because of one or more of the following:

    a) Quintiles Transnational Holdings, Inc., never had the authority to delegate discretion to Defendants following the inception of the Plan;

    b) The group insurance policy (Exhibit A) is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

    d) If it had the power to delegate discretion, Quintiles Transnational Holdings, Inc. did not properly delegate discretionary authority over claims decisions to Defendants; or

**Conflict Must be Considered:**

24. Unum made the decision to deny the benefits and would pay any benefit due out of its own funds.

25. Unum was under a perpetual conflict of interest because the benefits would have been paid out of their own funds.

26. Unum allowed its concern over its own funds to influence their decision-making.

27. Unum's conflict of interest and bias is evident in the fact that it establishes monthly financial targets that encourage and incentivize its claims handlers to terminate a specified number of claims every month.

28. The monthly financial targets for denying claims are called "recovery plans," "recovery guidance," or words to that effect, and are provided by Unum's finance department to Unum's Assistant Vice Presidents and Directors who supervise and conduct claims handling.

29. The monthly targets, or "recovery plans," include the count of total claims that should be recovered.

30. Internal documents reveal that financial targets and goals for claim closures are set at the unit level and that there are goals set for open claim recoveries (i.e., denying an open claim) per day. (See Exhibit B, Weekly Tracking Reports).

31. In order to receive bonuses under Unum's incentive program, Unum employees are evaluated against certain criteria, which include planned claim terminations, expected liability acceptance rates, and anticipated reopen rates. (see e.g., Exhibit C, ID Director Scorecards).

32. In the recent deposition of the Assistant Vice President, Marianne Justin, who was the Unum AVP over the Director and the DBS who evaluates claims similar to the Plaintiff's. Ms. Justin confirmed that she received "financial guidance" each month. (See Exhibit D, selected excerpts from the Deposition of Marianne Justin, p. 47:23-51:6).

33. Ms. Justin also received a Weekly Tracking Report each Monday that contained new financial target numbers for her team. Id. at, 103:11-18. Ms. Justin explained that she shares the Weekly Tracking Reports with her team in weekly meetings on each Tuesday. Id. at, 80:13-82-21; 99:15-100:22.

34. Directors in AVP Justin's team are expected to be familiar with how the Weekly Tracking Reports are formatted, how they work, and what their data means for their team. Id. at, 103:11-105:9.

35. AVP Justin confirmed that whether Unum's AVPs meet the financial metrics is part of their performance evaluation. Id. at, 136:9-16.

36. Defendants targeted Plaintiff's claim for termination in order to meet their financial goals.

37. Defendants' targeting of Plaintiff's claim for denial taints all evidence it developed during the review of his claim as the review was designed to reach the result of a denial, not an impartial weighing of the evidence.

38. Defendants have acted under a policy to take advantage of the potential applicability of ERISA to claims.

39. The Defendants' decision-making process violated ERISA by failing to give the Plaintiff a full and fair review of the claim.

40. The Defendants' decision-making process violated the terms of the applicable ERISA Plans and ERISA law and regulations.

41. Based on the above, de novo review applies and the Defendants' decision to deny benefits was wrong.

42. If the court finds de novo review does not apply, the Defendants' decision to deny benefits was wrong under the terms of the Plan and under ERISA and was arbitrary and capricious.

## The Long Term Disability Claim

43. BARNETT restates and incorporates by reference paragraphs 1-42.

44. BARNETT worked for Quintiles Transnational Holdings, Inc., as a Clinical Nurse Educator.

45. BARNETT was forced to stop working in 2016, due to gastroparesis, inflammatory polyarthritis, sacroiliitis, osteoporosis, and mixed connective tissue disorder.

46. BARNETT filed a claim for benefits under the Plan.

47. After the elimination period, UNUM LIFE and/or UNUM found BARNETT disabled under the terms of the Plan and paid her disability benefits commencing on December 1, 2016.

48. In 2018, after paying 24 months of benefits, UNUM LIFE and/or UNUM determined BARNETT continued to meet the policies definition of disability as UNUM LIFE and/or UNUM found BARNETT was unable to perform the duties of any gainful occupation.

49. In March 2020, UNUM LIFE and/or UNUM conducted a review of BARNETT's claim for continuation of benefits.

50. UNUM LIFE and/or UNUM denied the claim on September 9, 2020.

51. Before UNUM LIFE and/or UNUM's denial, BARNETT underwent a 2 Day Functional Capacity Evaluation (FCE) on August 12, 2020. and August 13, 2020, with LeNeve Duncan, PT. The results of the evaluation concluded BARNETT is incapable of performing a sedentary level job especially due to a limited sitting tolerance and her fatigue.

52. The report from this FCE was provided to UNUM LIFE and/or UNUM before its denial in September 2020.

53. On February 23, 2021, BARNETT underwent a Vocational Assessment with Ashley Johnson, MS, CRC. Ms. Johnson concluded, based

on a review of medical records and the results of the FCE, that BARNETT is vocationally unable to perform the materials duties of any occupation due to her objective restrictions.

54. BARNETT filed a timely appeal of UNUM LIFE and/or UNUM's denial on March 8, 2021.

55. UNUM LIFE and/or UNUM upheld their wrongful denial on April 26, 2021.

56. At all relevant times, BARNETT met and continues to meet the policy's definition of disability.

57. Due to limitations and restrictions associated with her conditions, BARNETT is unable to perform the material and substantial duties of any gainful occupation.

58. BARNETT is under the regular care of a doctor.

59. BARNETT is unable to perform any work, let alone work that will allow her to earn 60% of her predisability earnings.

60. With respect to all claims made herein, BARNETT exhausted all administrative remedies by pursuing all mandatory pre-suit appeals requiredunder the plan and 29 C.F.R. § 2560.503-1.

**Breach of Privacy, Confidentiality, and Fiduciary Duty**

61. BARNETT restates and incorporates by reference paragraphs 1-50.

62. Prior to UNUM LIFE and/or UNUM's initial denial of the claim on September 9, 2020, UNUM LIFE and/or UNUM were advised they were not allowed to contact BARNETT or her providers.

63. All authorizations had been revoked once BARNETT obtained the undersigned counsel's representation.

64. On March 5, 2020, a letter was sent to UNUM LIFE and/or UNUM reiterating that UNUM LIFE and/or UNUM were not allowed to contact BARNETT or her providers. UNUM LIFE and/or UNUM acknowledged receipt of this letter on March 13, 2020.

65. On July 2, 2021, UNUM LIFE and/or UNUM adjuster, Donald Beaudette, contacted the undersigned counsel and stated UNUM LIFE and/or UNUM's peer reviewers had contacted BARNETT's providers without permission.

66. In addition to contacting these providers by phone, UNUM LIFE and/or UNUM also sent forms to BARNETT's providers to complete, however, the forms were misleading and persuaded the provider into stating BARNETT was not disabled.

67. On July 14, 2020, still during the claim process, the undersigned requested UNUM LIFE and/or UNUM to inform BARNETT

what was discussed about her case with any of UNUM LIFE's and/or UNUM's attorneys due to their breach of confidentiality and claim handling.

68. On July 16, 2020, UNUM LIFE and/or UNUM responded by acknowledging the breach of privacy and confidentiality, however declined the undersigned's request for production of attorney-client privileged communication.

69. On January 8, 2021, the undersigned provided case law to UNUM LIFE and/or UNUM that clearly set forth the fiduciary exception to the attorney client privilege.

70. On January 13, 2021, UNUM LIFE and/or UNUM responded and stated the letter and attached materials were given consideration, however, UNUM LIFE and/or UNUM maintained its position that the attorney communications in the file were privileged work product and not subject to disclosure.

71. UNUM LIFE and/or UNUM did not act as a fiduciary as the claim was handled unreasonably and unfairly. The claim was not decided properly as UNUM LIFE and/or UNUM failed to provide all material requested and failed to provide fair and rational reviews.

72. Based on the above, de novo review applies.

## Damages

73. UNUM LIFE and/or UNUM have failed and refused to pay the benefits sought by BARNETT since September 10, 2020.

74. BARNETT is entitled to benefits under the Plan for Long Term Disability benefits from September 10, 2020, through the date of filing this action and continuing as long as she continues to demonstrate she meets the definition of disability based upon the restrictions and limitations related to her impairments.

75. UNUM LIFE and/or UNUM was paying benefits under the plan of $7,177.08 per month, which are calculated at a rate of 66.7% of BARNETT's gross yearly earnings of $93,902.28.

76. BARNETT receives Social Security Disability therefore UNUM LIFE and/or UNUM is entitled to an offset of $1,396.00, making BARNETT's gross monthly LTD benefit $5,781.08.

77. As of the date of filing this action, UNUM LIFE and/or UNUM owes BARNETT a total of 11.93 monthly benefit payments at the rate of $5,781.08 an aggregate sum of $69,987.55.

78. Plaintiff is entitled to benefits herein because:
 a) The benefits are permitted under the Plan.
 b) Plaintiff has satisfied all conditions to be eligible to receive the benefits.

c) Plaintiff has not waived or otherwise relinquished entitlement to the benefit.

79. Each monthly benefit payment owed since September 10, 2020, is a liquidated sum and became liquidated on the date the payment was due and payable. Plaintiff seeks pre-judgment interest on each such payment.

80. Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), BARNETT is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA. Plaintiff has been required to obtain the undersigned attorney to represent him in this matter and has agreed to a reasonable attorney fee as compensation to him for his services.

**WHEREFORE**, the Plaintiff, MARGARET BARNETT, asks this Court to enter judgment against the Defendant, THE UNUM LIFE and/or UNUM LIFE INSURANCE COMPANY OF AMERICA, finding that:

a) The Plaintiff is entitled to Long Term Disability benefits from September 10, 2020, through the filing of this lawsuit; and

b) Awarding benefits in the amount not paid to the Plaintiff from September 10, 2020, to the date of filing this lawsuit—a total of $68,987.55, together with pre-judgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid, and declare entitlement to any additional benefits owed to Plaintiff from the

time of filing this Complaint to the time of Judgment in this action; and award reasonable attorney fees and costs incurred in this action; and

  c) for such other and further relief as this Court deems just and proper, including but not limited to:

    1. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

    2. remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, an

    3. ordering Defendant to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or reinstating any ancillary benefits which should properly be paid or for which coverage should be awarded as a result of Plaintiff's receipt of disability benefits under the Plan.

DATED this 10th day of September 2021.

                  Respectfully,

                  TUCKER LAW GROUP, P.A.
                  LEAD COUNSEL FOR PLAINTIFF

                  ***/s/ William C. Demas***
                  WILLIAM C. DEMAS. ESQUIRE
                  Florida Bar # 0142920
                  demas@tuckerlawgroup.com
                  JOHN V. TUCKER, ESQUIRE
                  Florida Bar # 899917
                  tucker@tuckerlawgroup.com
                  5235 16th Street North
                  St. Petersburg, Florida 33703
                  Tel.: (727) 572-5000
                  Fax:(727) 571-141

                  ERIC BUCHANAN & ASSOCIATES, PLLC CO-COUNSEL FOR THE PLAINTIFF

                  ***/s/ Hudson T. Ellis***
                  Hudson T. Ellis
                  BPR #28330
                  ellish@buchanandisability.com
                  414 McCallie Avenue
                  Chattanooga TN 37402
                  (423) 634-2506
                  FAX: (423) 634-2505